UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Shawn Gibney,                    :
        Petitioner,              :
                                 :
    v.                           :        File No. 2:07-CV-104
                                 :
Robert Hofmann,                  :
Commissioner, Vermont            :
Department of Corrections,       :
        Respondent.              :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 1, 9 and 13)

    Petitioner Shawn Gibney, proceeding *pro se*, seeks a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  Gibney was

convicted in 1999 of first degree murder.  He now claims (1)

that the evidence brought against him was insufficient; (2)

that the trial court should have allowed in evidence showing

that others had motive to kill the victim; (3) that the trial

court wrongfully suppressed exculpatory evidence; (4)

ineffective assistance of counsel; (5) prosecutorial

misconduct; (6) improper jury instruction; and (7) that the

Vermont Supreme Court failed to follow clearly established

federal law.  For the reasons set forth below, I recommend

that the respondent's motion to dismiss (Paper 13) be GRANTED,

and that Gibney's initial (Paper 1) and amended (Paper 9)

petitions be DISMISSED.

## Factual and Procedural Background

On February 8, 1999, Gibney was convicted by a jury of murdering his former work supervisor, Sam Gendron. At the time of his murder, Gendron was driving home from his workplace in Richford, Vermont. In what the Vermont Supreme Court described as "an assassination," Gendron was shot multiple times by a semi-automatic weapon. "One of the bullets blew away a portion of Gendron's scalp and skull; a portion of the skull was found on the ground near the truck."

Although the murder weapon was never found, an empty box of cartridges for that type of weapon was later discovered in Gibney's house. The State also established that Gibney had owned an assault rifle of the type used in the murder, and numerous observers placed him near the scene of the crime shortly before Gendron's shooting. See State v. Gibney, 175 Vt. 180, 182-83 (2003).

Gibney appealed his conviction, arguing that the jury's verdict was not supported by the evidence; that he was improperly barred from offering evidence that others had a motive to kill Gendron; that the trial court erred when it failed to impose a sufficient sanction for the destruction of notes taken by police officers during their investigation; and that the trial court erred in concluding that his sentence

2

should be aggravated.  <u>Id.</u> at 181.

On the matter of whether the evidence was sufficient, the Vermont Supreme Court found that "[t]he State's case was strongest with respect to motive." <u>Id.</u> at 182.  In 1992, Gibney had been fired from his job after assaulting Gendron. He blamed Gendron for the firing, and "threatened and harassed Gendron thereafter.  On one occasion [Gibney] called Gendron a 'dead man.'" <u>Id.</u>  He also reportedly "told an investigating police officer that next time he would take care of Gendron and 'blow his head off.'" <u>Id.</u>  Gendron's murder occurred on the fifth anniversary of Gibney's firing.

The Vermont Supreme Court allowed that the "opportunity evidence" against Gibney was "less clear." <u>Id.</u>  Gendron was murdered sometime after 11:36 a.m., when he punched out of work, and before 11:51 a.m., when neighbors near the crime scene called an ambulance.  While some observers saw Gibney in the vicinity of the murder somewhere between 10:30 and 11:30 a.m, another testified that she saw Gibney drive by her at around 11:45 a.m. in a location that is a 30-minute drive from the murder scene.  Also, as noted by the Vermont Supreme Court,

> A witness was walking up Hardwood Hill Road when
> Gendron passed in his truck going in the same
> direction.  About thirty seconds thereafter, the

witness heard shots and the sound of a running motor on the truck, but observed no one else driving on Hardwood Hill Road. The observer came up to the truck off the road, saw Gendron's body, and proceeded to the next house up the hill. At that house, three persons were working. They heard the shots, and one went outside to look. He could see the road but neither saw nor heard a vehicle pass on it after the shots.

The only access to the point of the shooting by car was by Hardwood Hill Road. However, bike trails provided access to Hardwood Hill Road near the point of the shooting for off-road vehicles.

Id. at 182-83. On appeal, the court considered all of the facts presented and concluded that "the evidence as a whole sufficiently and fairly supports a jury verdict of guilty beyond a reasonable doubt." Id. at 185.

Gibney next argued that he was improperly barred from offering evidence to show that others had a motive to kill Gendron.

Specifically, defendant wanted to show, through twenty or more witnesses, that Gendron was observed masturbating in his vehicle while watching children walking on the street and that he had a reputation for such conduct. The witnesses included a school official, a town constable, and a state police officer who had investigated the allegations. The defense also wanted to show that Gendron, while in high school many years earlier, had stalked a young woman and forced her into his truck with a knife.

Id. The trial court barred the introduction of such evidence, finding that the defense was seeking to bring to trial a "mixed brew of gossip, innuendo, and unsubstantiated

4

allegations as providing motive, but nothing in the way of opportunity or direct connection evidence." Id. at 185-86. The Vermont Supreme Court agreed, finding that the probative value of the proffered evidence was "limited" as compared to the "prospect of confusion of the issues by a twenty-witness mini-trial of Gendron for sexual misconduct, with no real connection to the offense being tried." Id. at 187.

Gibney's third ground for appeal was that the trial court allegedly should have dismissed the case or otherwise sanctioned the prosecution for the destruction of notes taken by the police during the investigation. The trial court held a three-day evidentiary hearing on this issue. At the conclusion of the hearing, the court found that the notes were discarded as part of standard police practice and did not contain exculpatory material. The court also provided the jury with an adverse inference instruction. Id. at 188-89. On appeal, the Vermont Supreme Court held that under both the United States and Vermont Constitutions, the trial court acted properly in declining to dismiss the case. Id. at 189-94.

Gibney's final argument on direct appeal pertained to his sentencing. The Vermont Supreme Court remanded on that issue, and Gibney was re-sentenced.

Gibney subsequently filed a petition, through counsel,

for post-conviction relief ("PCR") in state court.  The
petition raised four arguments: ineffective assistance of
trial and appellate counsel; prosecutorial misconduct; abuse
of discretion by the trial court; and a claim that the Vermont
Supreme Court failed to use the proper standards on direct
appeal.  On May 19, 2006, the state court dismissed the
petition without prejudice "for further investigation."
(Paper 3 at 2-3).

On October 18, 2006, Gibney moved *pro se* to reinstate his
PCR petition.  The petition was reinstated, and in January
2008 the State moved for summary judgment.  Gibney did not
respond to the summary judgment motion, and the lower court
granted the motion without explanation.

On appeal, Gibney raised essentially the same seven
arguments as those presented in his § 2254 petition.  The
Vermont Supreme Court found that, "with the exception of his
ineffective-assistance-of-counsel claim, all of the
petitioner's claims are inappropriate for resolution in a
PCR."  In re Gibney, 2008 WL 3976534, at *1 (Aug. Term 2008).
Specifically, the court noted that it had considered Gibney's
arguments pertaining to sufficiency of the evidence and the
challenged trial court rulings in the direct appeal.
"Petitioner's claim regarding the standard of review employed

by the Supreme Court should have been raised in a motion for reargument, not a PCR. Summary judgment was therefore appropriately granted to the State on petitioner's first six claims." Id. at *2.

Gibney's ineffective assistance claim had roughly five sub-parts. First, he claimed that counsel failed to properly ensure that police investigatory notes were preserved and disclosed. The Vermont Supreme Court held that, consistent with its ruling with regard to these notes in Gibney's direct appeal, there was no showing of prejudice.

Second, Gibney argued that counsel failed to properly investigate third-party culpability. The Vermont Supreme Court again found no prejudice, and referred back to its finding that the value of such evidence was "outweighed by the prospect that it would confuse the issues and that it had no real connection to the offense being tried." Id. Third, Gibney faulted counsel for failing to depose a witness who would have testified that she did not see his car near the crime scene. The court ruled that such testimony would have been merely cumulative.

Gibney's final claims were that (1) trial counsel failed to seek a mistrial when it was discovered that police had unauthorized conversations with the jury during trial, and (2)

7

appellate counsel's performance at oral argument was incompetent. The Vermont Supreme Court summarily dismissed these claims for failure to show prejudice, and affirmed the granting of summary judgment on Gibney's PCR petition.

Gibney initially filed his § 2254 petition on May 7, 2007. Because the petition contained a mix of exhausted and unexhausted claims, the unexhausted claims were dismissed without prejudice and the remainder of the case was stayed. After exhausting his remedies in state court, Gibney returned with an amended petition on October 7, 2008. The respondent moved to dismiss, and Gibney filed a timely opposition memorandum. In response to a subsequent Court order, the respondent has submitted transcripts from Gibney's trial and the briefs from his direct appeal.

## Standard of Review

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"Clearly established Federal law" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" <u>Green v. Travis</u>, 414 F.3d 288, 296 (2d Cir. 2005) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see</u> <u>also</u> <u>Earley v. Murray</u>, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

9

of [a] prisoner's case." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Earley</u>, 451 F.3d at 74.

The AEDPA standard of review is deferential to the reasoning provided in state court decisions. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Gilchrist v. O'Keefe</u>, 260 F.3d 87, 93 (2d Cir. 2001) (quoting <u>Williams</u>, 529 U.S. at 411). The Second Circuit added that, while "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Gilchrist</u>, 260 F.3d at 93 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)). State court factual determinations receive a presumption of correctness if they are "fairly supported by the record." <u>Williams v. Bartlett</u>, 44 F.3d 95, 99 (2d Cir. 1994) (citing 28 U.S.C. § 2254(d)(8)).

Discussion

I. <u>Insufficient Evidence</u>

Gibney's first argument is that the evidence against him

was insufficient.  He particularly attacks the Vermont Supreme Court's opinion on direct appeal, claiming that the court applied the wrong standard of review.  He also submits that he should not have been convicted based upon evidence that was circumstantial and, in his view, speculative.

The standard of review issue arises in the context of Gibney's motion for a judgment of acquittal under Vermont Rule of Criminal Procedure 29.  In reviewing a lower court ruling on such a motion, the Vermont Supreme Court determines whether "[t]he evidence, taken in the light most favorable to the State and excluding any modifying evidence, must sufficiently and fairly support a finding of guilty beyond a reasonable doubt."  State v. Gibney, 175 Vt. at 181-82; see also State v. Grega, 168 Vt. 363, 380 (1998).  Although this same standard was set forth in his brief on direct appeal (Appellant's Brief at 12), Gibney now argues that the proper standard is a review of all evidence, and that modifying evidence should not be excluded.

Gibney's lone case citation in support of his argument, United States v. Walker, 191 F.3d 326 (2d Cir. 1999), states that when considering a challenge to the sufficiency of the evidence, all evidence submitted at trial must be considered "'in the light most favorable to the government, crediting

every inference that the jury might have drawn in favor of the
government.'"  Id. at 333 (2d Cir. 1999) (quoting United
States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996)).  This
rule, that evidence be taken in a light most favorable to the
prosecution, is very much a part of the Vermont standard.
State v. Gibney, 175 Vt. at 181-82.  Vermont's exclusion of
what it calls "modifying evidence" also finds support in
federal case law.  See, e.g., United States v. Gomez, 165 F.
650, 654 (8th Cir. 1999) (district court properly denies motion
for judgment of acquittal "if there is substantial evidence
justifying an inference of guilt irrespective of any
countervailing testimony that may be introduced.") (internal
quotation marks and citation omitted).  Accordingly, and
assuming that Vermont would be bound by a federal standard
when construing its own Rules of Criminal Procedure, Gibney
has not provided a basis for finding that the Vermont standard
violated or unreasonably applied clearly established federal
law.

Furthermore, even if the Court were to accept Gibney's
argument and find that the correct standard bars the exclusion
of modifying evidence, it is plain from the Vermont Supreme
Court's decision that it did, in fact, consider such evidence.
The court first reviewed the testimony of the woman who saw

Gibney's car 30 minutes away from the crime scene at the approximate time of the murder.  State v. Gibney, 175 Vt. at 184.  Viewing this evidence in a light most favorable to the prosecution, the court reasoned that (1) "the jury could reconcile [this] testimony with that of the witness who saw defendant on Hardwood Hill Road towards 11:30 A.M.," and (2) "the jury could find that [the witness] was mistaken in her time estimates."  Id.  The Court also considered the testimony of a witness who came out of a neighboring house after hearing gunshots.  "In view of all of the evidence, the jury could conclude that he did not exit the house quickly enough to see a fleeing car driven by defendant."  Id. at 184-85.

In closing its analysis on the sufficiency of evidence issue, the Vermont Supreme Court noted that a review of *all* of the evidence, including modifying evidence, could result in an acquittal, but that such a result was not warranted in this case.

> We acknowledge that determining the sufficiency of
> the evidence is a matter of judgment.  We also
> acknowledge that if the case for conviction were
> substantially less strong, it could reach a point
> where it could not prevail over the countervailing
> evidence under the reasonable doubt standard.  In
> this case, however, we conclude that *the evidence as
> a whole* sufficiently and fairly supports a jury
> verdict of guilt beyond a reasonable doubt.

Id. at 185 (emphasis added).  Therefore, even under a "review

13

all evidence" standard, it cannot be said that the Vermont Supreme Court's analysis violated the law.

Gibney further argues that the evidence was insufficient because the State failed to link him directly to the crime scene. While conceding that the State provided evidence of motive, Gibney claims that the jury's conclusions as to opportunity were based upon "speculation or disbelief to prove proof positive." (Paper 9-3 at 1). This argument understates the strength of the prosecution's case.

As the Vermont Supreme Court properly concluded, "[t]he undisputed State's evidence that defendant committed the crime was very strong." Id. at 183. Rather than speculation, the jury was presented with evidence that Gibney was observed at the place from which the shots were fired shortly before the shooting. It was also established that he had owned the sort of rifle used in the killing, and an empty box of cartridges was found in his home. In conjunction with the motive evidence, these facts were sufficient for "any rational trier of fact" to find "the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord United States v. Finnerty, 533 F.3d 143, 148 (2d Cir. 2008). The fact that no direct evidence was presented does not necessarily undermine the strength of the

prosecution's case.  See United States v. D'Amato, 39 F.3d
1249, 1256 (2d Cir. 1994) (holding that a jury verdict may be
based on circumstantial evidence).  Gibney's petition for
relief based upon a lack of sufficient evidence should,
therefore, be DENIED.

## II.  Exculpatory Motive Evidence

Gibney's next claim is that the trial court erred when it
barred him from presenting evidence to show that others had a
motive to kill Sam Gendron.  The trial court barred the
evidence largely because the defense had not identified an
alternative perpetrator.  State v. Gibney, 175 Vt. at 185.
The trial court also found the evidence was barred under
Vermont Rule of Evidence 401 due to lack of relevance, and
under Rule 403 for likelihood to "confuse the issues,"
"mislead the jury" and be a "waste of time."  Id. at 186.  The
Vermont Supreme Court upheld the trial court's ruling,
primarily on the basis of the Rule 403 balancing test.  Id. at
186-88.

"A defendant has a right to present exculpatory evidence
to aid his defense and to confront witnesses brought against
him."  State v. Corliss, 168 Vt. 333, 337 (1998) (citing U.S.
Const. amend. VI); see also Crane v. Kentucky, 476 U.S. 683,
690 (1986).  That evidence, however, is subject to "reasonable

15

restrictions." <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998). Those restrictions include state and federal rules of procedure and evidence "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973); <u>see also</u> <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

In this case, Gibney sought to introduce "evidence of Gendron's sexual misconduct to show that others might have killed him because of this misconduct." <u>State v. Gendron</u>, 175 Vt. at 185. The testimony would have involved approximately twenty witnesses, including several public officials. Gibney also wanted to introduce evidence that Gendron forced a woman into his truck twenty years prior. <u>Id.</u> at 185, 187. Gibney argues that by barring this evidence, the trial court violated his constitutional right to show that a third party committed the crime. More specifically, he claims that the trial court "unconstitutionally shifted the burden of proving [the] specific identity of the killer on Petitioner." (Paper 9-3 at 9).

This Court should find no such constitutional violation.

First, the rulings by the Vermont courts were not contrary to clearly established federal law. Although the U.S. Supreme Court "has not articulated a specific set of circumstances under which a criminal defendant must be permitted to introduce evidence of potential third-party culpability," the Court has "found that such evidence must be admitted when, under the 'facts and circumstances' of the individual case, its exclusion deprived defendant of a fair trial." Wade v. Mantello, 333 F.3d 51, 58 (2d Cir. 2003) (quoting Chambers, 410 U.S. at 303).

In Wade, the Second Circuit reviewed a habeas claim in which the petitioner, as here, argued that evidence of an alternative perpetrator was improperly barred by the trial court. The Circuit Court's analysis found simply that the state appellate court, "acknowledging a criminal defendant's general right to present a defense, did not reach a different conclusion than the Supreme Court on a question of law." Id. The court further noted that the U.S. Supreme Court had not "arrived at a decision different from the [appellate court's] on 'materially distinguishable' facts." Id. This same analysis applies here. The Vermont Supreme Court acknowledged Gibney's right to present evidence in his favor, and did not make any ruling that conflicts with current U.S. Supreme Court

precedent.

The more involved question is whether the Vermont Supreme Court "unreasonably applied" clearly established federal law. On this issue, the <u>Wade</u> court found that the "dispositive" issue was the appellate court's ruling on "the propriety of the trial court's evidentiary ruling." <u>Id.</u> at 59.

The rulings in this case were "'ordinary evidentiary rulings by state trial courts'" concerning the admissibility of evidence, upon which the Supreme Court is "'traditionally reluctan[t] to impose constitutional constraints.'" <u>Id.</u> at 60 (quoting <u>Crane v. Kentucky</u>, 476 U.S. 683, 689 (1986)). To the extent the Constitution is concerned with the application of such rules, it is in cases where the result is a "'blanket exclusion' of categories of evidence when their application is 'arbitrary' or 'disproportionate to the purposes the [rules] are designed to serve.'" <u>Id.</u> at 60 (quoting <u>Crane</u>, 476 U.S. at 690; <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998)). For example, in <u>Chambers</u>, the problem was a "rigid application of state evidentiary rules" such that defense counsel could not cross-examine a witness who had repeatedly confessed to the murder for which counsel's client was on trial. 410 U.S. at 302. Gibney's case is clearly distinguishable, and presents no constitutional concerns.

18

Here, both the trial court and the Vermont Supreme Court carefully considered the probative value of the proposed evidence and its potentially prejudicial effect. In performing such a review, the trial court judge is granted broad discretion. United States v. George, 266 F.3d 52, 63 (2d Cir. 2001) (noting that the trial judge "is obviously in the best position to do the balancing mandated by Rule 403" and accordingly, has "'broad discretion' . . . to admit or exclude evidence pursuant to Rule 403.") (citations omitted); United States v. Qamar, 671 F.3d 732, 736 (2d Cir. 1982). The Vermont Supreme Court identified several persuasive reasons why the proposed evidence was of little probative value, including: (1) because no specific perpetrator was identified, Gibney could not show both motive and opportunity, (2) Gibney failed to identify any victims of Gendron's alleged sexual misconduct, and where there was an identified victim (the woman who was forced into the truck), the crime was "too remote" from Gendron's shooting 20 years later, and (3) investigators had failed to confirm Gendron's alleged misconduct. The court then found that, "[w]eighed against this limited probative value of defendant's proffered evidence was the prospect of confusion of the issues by a twenty-witness mini-trial of Gendron for sexual misconduct, with no

real connection to the offense being tried." <u>State v.</u> <u>Gendron</u>, 175 Vt. at 187.

In light of the likelihood for confusion and the questionable relevance of Gibney's proposed evidence, the Vermont Supreme Court's ruling on the trial court's decision was far from "arbitrary." <u>Scheffer</u>, 523 U.S. at 308. Consequently, its finding that the trial court did not violate Gibney's right to present a defense was not unreasonable, and no habeas corpus relief is warranted on this claim. <u>See</u> <u>Wade</u>, 333 F.3d at 62.

III. <u>Destruction of Police Notes</u>

Gibney's next claim is that although police systematically destroyed their investigative notes, the trial court failed to impose sanctions or take other appropriate action in response. The notes, he claims, contained information that was favorable to the defense, including evidence of benefits promised to prosecution witnesses, evidence pertaining to motive, and physical evidence.

The Vermont Supreme Court reviewed this issue under both federal and state standards. As to federal law, the court followed <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), in which the U.S. Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police,

failure to preserve potentially useful evidence does not constitute a denial of due process of law." The Second Circuit has set forth the applicable standard as follows:

> To establish a violation of the right [to present a defense], a criminal defendant must generally show that he was deprived of material and exculpatory evidence that could not be reasonably obtained by other means. In addition, we have held that a defendant pressing such a claim must show bad faith on the part of the government. Finally, in order to elevate this misconduct to a due process violation, the defendant must demonstrate that the absence of fundamental fairness infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

United States v. Williams, 205 F.3d 23, 29-30 (2d Cir.) (citations and internal quotations omitted), cert. denied, 531 U.S. 885 (2000).

As noted above, the trial court held a three-day evidentiary hearing to determine why the police had discarded their notes. The court found that the notes were discarded pursuant to usual police procedure, that the reports generated from those notes contained information that was both helpful and harmful to the prosecution's case, and that defense counsel had access to all witnesses interviewed by police, as well as the officers themselves. The court also concluded that the notes were not destroyed in bad faith. State v. Gibney, 175 Vt. at 188-89.

21

Because the officers "followed their long-standing practice and procedure," the Vermont Supreme Court easily found that there was no bad faith, and hence, no federal constitutional violation.  Id. at 190 (citing California v. Trombetta, 467 U.S. 479, 488 (1984) (no bad faith where police destroyed breath sample in accord with normal procedure and had no animus to defendant or intent to suppress evidence)). In its analysis under Vermont law, the Vermont Supreme Court conceded that much of the evidence to support the lower court's findings came from the officers themselves, but found that credibility determinations were best entrusted to "the judge who hears the evidence."  State v. Gibney, 175 Vt. at 193.  The court also found that the notes were "not important to the defendant's case and that their loss did not substantially prejudice defendant," in part because the "defendant here had alternative means to develop the evidence he desired."  Id.  For example, promises and threats made by police to certain witnesses were disclosed in pre-trial discovery.  Id. at 193-94.  Consequently, the court found that the defense could present its evidence and "impeach the quality of the investigation fairly and effectively."  Id. at 193 (citing Trombetta, 467 U.S. at 490) (although breath sample was destroyed, defendant could still argue why analysis

machine might give inaccurate reading)).

There is no indication, particularly in light of the significant effort by the trial court to uncover the facts, that either the lower court or the Vermont Supreme Court unreasonably applied clearly established federal law.  The findings of fact by the trial court on the question of bad faith are "fairly supported by the record," and thus assumed to be correct.  <u>Williams v. Bartlett</u>, 44 F.3d at 99. Moreover, under the standard enunciated by the Second Circuit in <u>United States v. Williams</u>, the defense was not deprived of material that could not be reasonably obtained by other means.  205 F.3d at 29-30.  To the extent that the jury needed to be made aware of the fact that notes were destroyed, an adverse inference instruction was provided.  <u>State v. Gibney</u>, 175 Vt. at 189.  Accordingly, Gibney has failed to show that his trial was unfair, and the Court should DENY habeas corpus relief on this claim.

IV.  <u>Ineffective Assistance of Counsel</u>

Gibney has also petitioned for relief on the basis of ineffective assistance of counsel.  In a single-page argument, he claims that counsel failed to ensure that police investigatory notes were preserved and disclosed; failed to investigate third-parties who might have committed the murder;

23

failed to object to the trial court's answers to juror
questions with respect to lost or missing evidence; failed to
secure a mistrial after the trial court provided an
"erroneous" jury instruction with respect to lost or missing
evidence; failed to seek a mistrial after it was discovered
that a police investigator had unauthorized conversations with
a juror during trial; and was ineffective at oral argument on
direct appeal.  (Paper 9-3 at 18).  To the extent that these
issues were fully addressed in Gibney's state court PCR
proceeding, he offers no argument as to how the Vermont
Supreme Court's determinations violated the § 2254 standard.

In the PCR appeal, the Vermont Supreme Court cited its
own case law, which in turn adhered to the standard for
ineffective assistance of counsel claims set forth in
Strickland v. Washington, 466 U.S. 668 (1984).  In re Gibney,
2008 WL 3976534, at *2 (Vt. Aug. Term 2008) (citing In re
LaBounty, 177 Vt. 635, 636 (2005) (citing In re Dunbar, 162
Vt. 209, 212 (1994))).  Under Strickland, a petitioner must
satisfy a two-part test in order to establish that his Sixth
Amendment right to effective assistance of counsel has been
violated.  466 U.S. at 687.  He must first show that counsel's
representation fell below an objective standard of
reasonableness, and then establish that the deficient

performance of counsel prejudiced the defense. <u>Id.</u> at 687-88.
In the habeas context, a petitioner must also show that "the
[state court] applied <u>Strickland</u> to the facts of his case in
an objectively unreasonable manner." <u>Cox v. Donnelly</u>, 387
F.3d 193, 197 (2d Cir. 2004) (internal quotation marks
omitted) (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002)).

In applying the first prong of the Strickland test, a
court "must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance; that is, the defendant must overcome the
presumption that, under the circumstances, the challenged
action might be considered sound trial strategy." <u>Strickland</u>,
466 U.S. at 689 (citation and internal quotation marks
omitted). A court must "make every effort ... to eliminate
the distorting effects of hindsight, to reconstruct the
circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time." <u>Id.</u>; <u>see
also</u> <u>Cox</u>, 387 F.3d at 198; <u>United States v. DiTommaso</u>, 817
F.2d 201, 215 (2d Cir. 1987). "The Sixth Amendment guarantees
reasonable competence, not perfect advocacy judged with the
benefit of hindsight." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8
(2003).

Under the prejudice prong of the <u>Strickland</u> test, a

habeas petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.

The Vermont Supreme Court dismissed some of Gibney's ineffective assistance claims on the basis of its findings on direct appeal.  For example, when Gibney faulted counsel for failing to ensure that police notes were preserved and disclosed, the court noted that "the issue of the destruction of police notes was raised by defense counsel at trial and in the petitioner's direct appeal, and the argument was rejected by both the trial court and this court."  In re Gibney, 2008 WL 3976534, at *2.  In those prior proceedings, the courts had determined that "there was no reasonable probability that the destroyed notes contained exculpatory materials."  Id. Accordingly, the Vermont Supreme Court found that Gibney could not show prejudice resulting from counsel's alleged failure to have the notes preserved.  Id.

Similarly, the question of third-party culpability was dealt with at length both at trial and on appeal.  Both courts found that the evidence presented was of limited value, and was outweighed "by the prospect that it would confuse the issues and that it had no real connection to the offense being

tried." Id. (citation omitted). Consequently, when asked to review whether counsel had adequately investigated third-party culpability, the Vermont Supreme Court found that Gibney had failed to show "specific prejudice from counsel's alleged errors, and we discern none." Id.

On both of these issues, the Vermont Supreme Court plainly rested its decision upon the prejudice prong of the Strickland standard. Given that court's conclusions on direct appeal, it was not objectively unreasonable for it to find that, even if counsel's performance was deficient, its prior rulings rendered any such performance harmless.

It is also highly questionable whether counsel did, in fact, perform ineffectively. At trial and on appeal, defense counsel argued repeatedly that police notes must be preserved, and that failure to do so should result in sanctions. Id.; State v. Gibney, 175 Vt. at 40-41. It is difficult to see what more counsel could have done, and Gibney offers no suggestions on this point. With respect to third-party culpability, Gibney offers little by way of argument, and specifically fails to explain how additional efforts by counsel would have erased the Rule 403 problem plaguing the third-party question. These claims of ineffectiveness should, therefore, be DENIED.

Gibney next argues that the trial court's handling of
jury questions, as well as its instruction to the jury, with
regard to lost and missing evidence should have provided
grounds for objections and a request for a mistrial. These
claims are not specifically addressed in the Vermont Supreme
Court's opinion in the PCR appeal, and may therefore be
unexhausted. It is also conceivable that the Vermont Supreme
Court was addressing these claims when it stated, in summary
fashion, that "[t]his Court has already considered and
rejected petitioner's arguments concerning the sufficiency of
the evidence and the trial court's evidentiary and other
rulings." <u>In re Gibney</u>, 2008 WL 3976534, at *2. In any
event, it is clear from the case history that the question of
lost and missing evidence was dealt with exhaustively, and
Gibney provides no basis for this Court to find that he was
prejudiced by counsel's failure to present appropriate
objections.

With respect to Gibney's claim that counsel failed to
depose a witness "who lived in the vicinity of the crime scene
and could testify that she did not see Petitioner's car
traveling near the crime scene," (Paper 9-3 at 18), the
Vermont Supreme Court found that such evidence would have been
merely cumulative. "At trial, petitioner presented testimony

28

of two witnesses who stated that they did not see a car in the vicinity of the murder scene immediately after the shooting, and a third who testified that [s]he observed defendant thirty minutes away within minutes of the shooting." Id. at *3. Because the evidence was deemed cumulative, the Vermont Supreme Court found that no prejudice resulting from its omission. Again, Gibney offers no argument on this point, and there is nothing objectively unreasonable about the state court's conclusion.

Gibney's two final ineffective assistance claims were dealt with only briefly in the PCR appeal, with the Vermont Supreme Court finding no prejudice from either. Id. The first is a claim that counsel should have sought a mistrial after it was revealed that police had unauthorized contact with the jury during trial. Gibney claims that the contact involved "an investigating officer, during jury deliberations, offering a juror a job after trial." (Paper 9-3 at 18).

In the habeas context, a petitioner alleging constitutional error arising out of improper juror contacts must show "concrete prejudice." Van Stuyvesant v. Conway, 2007 WL 2584775, at *33 (S.D.N.Y. Sept. 7, 2007). Without such a showing, "there is no basis to disturb a trial verdict." Bell v. Coughlin, 778 F. Supp. 164, 170 (S.D.N.Y.

1991).  The Vermont Supreme Court found no prejudice, Gibney
has not shown any prejudice, and thus there is no basis for
granting habeas corpus relief.

Gibney's final ineffective assistance claim is that
appellate counsel performed poorly at oral argument.
Specifically, counsel is alleged to have "misstated material
facts and circumstances of the case and was unable to answer
specific question asked by the Supreme Court Justices."
(Paper 9-3 at 18).  The Vermont Supreme Court would have been
in the best position to assess whether counsel's performance
was, in fact, prejudicial, and it found none.  Consequently,
this Court should not find that the state court's conclusion
as to the prejudice prong of Strickland constituted an
unreasonable application of the facts before it.  Gibney's
petition for a writ of habeas corpus on the basis of
ineffective assistance of counsel should, therefore, be
DENIED.

V.   Remaining Claims

Gibney's remaining claims overlap considerably with the
issues discussed above.  His first such claim alleges that the
prosecution failed to hand over exculpatory evidence in the
form of the destroyed police notes, thereby violating clearly
established federal law under Brady v. Maryland, 373 U.S. 83

30

(1963), <u>United States v. Bagley</u>, 473 U.S. 667 (1985) and

<u>Giglio v. United States</u>, 405 U.S. 150 (1972). The Vermont

Supreme Court acknowledged the principles set forth in these

cases, but determined that the destruction of evidence issue

was "controlled under the Fourteenth Amendment by the Supreme

Court decision in <u>Arizona v. Youngblood</u> . . . ." <u>State v.</u>

<u>Gibney</u>, 175 Vt. at 190. Because <u>Youngblood</u> does indeed govern

destruction of evidence issues, the state court's analysis did

not involve an unreasonable application of clearly established

federal law. 488 U.S. at 58.

Moreover, Gibney has failed to present a valid

constitutional claim under any of the cited cases. For

example, a <u>Brady</u> violation has three components: "The

evidence at issue must be favorable to the accused, either

because it is exculpatory, or because it is impeaching; that

evidence must have been suppressed by the State, either

willfully or inadvertently; and prejudice must have ensued."

<u>See</u> <u>Stickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). The

state courts found (1) that the destroyed evidence in this

case was not exculpatory, and (2) that no prejudice was

suffered. Accepting these conclusions for the reasons

discussed above, Gibney cannot now set forth a valid <u>Brady</u>

claim. The same is true under both <u>Bagley</u> and <u>Giglio</u>. <u>See</u>

31

Bagley, 473 U.S. at 682 (prejudice is established "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); Giglio, 405 U.S. at 154.

Gibney next contends, in a single paragraph, that the trial court erred when it prohibited evidence of third-party culpability; failed to allow evidence of the victim's sexual misconduct; failed to take appropriate action after evidence was destroyed; provided an erroneous jury instruction and inadequate answers to juror questions pertaining to destroyed evidence; and found that police notes were not destroyed in bad faith. For reasons set forth above, none of these claims provides a basis for habeas corpus relief.

Gibney's final argument is that the Vermont Supreme Court failed to adhere to clearly established federal law, including the rules set forth in Youngblood, Brady, Bagley, and Giglio. He also claims that his constitutional rights were violated when the Vermont Supreme Court found the evidence against him to be sufficient for a conviction. As discussed previously, these claims lack legal merit under the standards set forth in 28 U.S.C. § 2254, and should therefore be DENIED.

## Conclusion

For the reasons set forth above, I recommend that the

respondent's motion to dismiss (Paper 13) be GRANTED, and that Gibney's initial (Paper 1) and amended (Paper 9) petitions be DISMISSED.

Dated at Burlington, in the District of Vermont, this 6<u>th</u> day of May, 2009.


<u>/s/ John M. Conroy</u>
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).